(17 App. Div. 234.)

### In re GLEN SALT CO.

### OTIS et al. v. BRADLEY et al.

(Supreme Court, Appellate Division, Third Department. May 5, 1897.)

1. COURTS—JURISDICTION—MATTERS INVOLVED IN CONTROVERSY.
    Before the voting commenced at a stockholders' meeting for the election of directors, injunctions issued in separate actions brought by the corporation and by a stockholder against two of the other stockholders (B. and O.) were served, restraining them from voting their shares of stock. The election then proceeded, and the other shares were voted. After the result of the election was announced, the parties stipulated that on a day named both injunctions should be submitted to a designated justice of the supreme court, at his chambers, for decision; that he should have jurisdiction for that purpose, if the statute gave him such; that review of the entire proceedings should then be had as provided by statute; and that, on the day named, "notice is hereby given by each party to the other to appear before" said justice, at his chambers, "for the purpose of reviewing both proceedings and the election in general." Thereupon plaintiff in one of the injunction suits instituted a proceeding in the supreme court by petition, asking that a new election be ordered, that B. be declared entitled to vote his shares, and that O. be declared not entitled to vote his shares. A few days after the day named in the stipulation the parties met before the justice. The proceeding was then entitled "In the Matter of the Election of the Directors of" the corporation, and a hearing was had. The court had jurisdiction of the subject-matter, and all the parties to the injunction suits were present. Held, that the proceeding was a continuation of the one noticed for hearing on the day named in the stipulation, and the justice properly treated the proceeding as including the notice to vacate made in each injunction suit, since his power to decide as to the right of defendants to vote would not be complete unless he could dispose of the injunctions.

2. CORPORATIONS—RIGHT OF STOCKHOLDER TO VOTE—TRANSFER OF SHARES.
    A purchaser of shares of stock sent his certificate by registered letter to the corporation, to be transferred to his name on the stock book. The letter was received at the post office of the corporation 10 days before a corporate election was held. The postmaster placed in the post-office box of the corporation the usual card requesting it to call for a registered letter. The secretary of the corporation saw the card in the box, but did not take it out, because he thought it was a notice to pay box rent. The corporation did not know that the letter was in the post office until 5 days before the election. Held, that the failure to transfer the stock 10 days before the election, as required by section 20 of the general corporation law, so as to entitle the owner to vote, was not caused by the negligence of the corporation.

**3. SAME—TIME OF TRANSFER.**

To entitle the owner of shares of stock to vote at a corporate election, a transfer to his name on the stock book 10 days before such election is necessary, under section 29 of the stock corporation law, providing that "no transfer of stock shall be valid, as against the corporation, its stockholders and creditors, * * * until it shall have been entered" in the stock book, and section 20 of the general corporation law, making the stock book evidence of a stockholder's right to vote, and providing that every stockholder shall be entitled "to one vote for every share of stock held by him for 10 days immediately preceding the election."

**4. SAME—WHO MAY QUESTION RIGHT TO VOTE.**

The right of a stockholder to vote shares transferred to him by a former owner may be challenged by any other stockholder on the ground that the transfer was in effect merely a proxy given for a consideration, and therefore void under section 20 of the general corporation law.

Appeal from special term, Chemung county.

Proceeding for the election of directors of the Glen Salt Company. From an order adjudging that on the 26th day of May, 1896, Walter H. Bradley was, and had been for more than 10 days prior thereto, the owner of certain 150 shares of stock in the Glen Salt Company transferred to him by the Bradley Salt Company, and was entitled to vote upon such shares at the election of directors held on the 26th May, 1896; also adjudging that George C. Otis was not the owner of, and was not entitled to vote at such election upon, certain 140 shares of the stock of said Glen Salt Company transferred to him upon the books of said company from John C. Clute; and setting aside the election held on said May 26th, and ordering a new one,— George C. Otis and others appeal. In connection with the argument of said appeal, and upon the same papers, two other appeals are argued from orders made at the same special term in actions in the supreme court; one in the action of Bradley Salt Company against George C. Otis, and the other in the action of the Glen Salt Company against Walter H. Bradley. The order in the action against Otis denied the application of the defendant therein to vacate the temporary injunction which restrained the defendant therein from voting at said election upon the said 140 shares. The order in the action against Bradley vacated a temporary injunction which restrained the defendant therein from voting upon the said 150 shares at the said election. Reversed in part.

The Glen Salt Company is a domestic corporation organized by articles dated May 22, 1893, and filed May 29, 1893, for the purpose of mining and manufacturing salt. The capital stock was $100,000 divided into shares of $100 each, and the number of its directors was three. This corporation was formed in pursuance of an agreement made May 13, 1893, between John A. Clute, J. C. Buxton, and George C. Otis of the first part, and Bradley Salt Company, represented by W. H. Bradley, treasurer, and E. H. Morris, of the second part, in and by which the parties of the first part agreed to take $50,000 of the stock of the new corporation, and the parties of the second part the balance, —the Bradley Salt Company taking $49,500 and E. H. Morris $500. It was also therein agreed that the corporation should purchase of the parties of the first part certain real and personal property, and that the five shares of stock to be subscribed and paid for by Morris should be voted as directed by Otis, and that it should be so stated on the stock certificate. Upon the organization of the corporation the stock was taken as agreed, Clute and Otis each taking 200 shares, and Buxton 100 shares, the Bradley Salt Company taking 490 shares, W. H. Bradley 5 shares, and E. H. Morris 5 shares. Buxton, Clute, and Otis were the first directors, and were re-elected at the annual meetings

in 1894 and 1895. The property was purchased as provided in the agreement. On the 20th August, 1894, the stock taken by Otis, Buxton, and Clute had been so transferred between themselves that Otis held 230 shares, Buxton 130 shares, and Clute 140 shares. At that date they entered into a written agreement by which each agreed with the others that he would not sell or transfer his stock without the personal service on the others of a notice in writing of his desire and intention so to do, and that, after such service, he would hold his stock for 60 days, and on demand at any time during said period would transfer to each of the others one-half of his stock, or so much thereof as they might desire, for the sum of 70 cents on the dollar of the face value. A similar provision was made for the contingency of a transfer or pledge of the stock as security, and in case of a breach of the contract the sum of $10,000 was agreed upon as the liquidated damages. On March 4, 1896, Clute executed a transfer of his 140 shares to Otis, and on the 25th March, 1896, executed the usual transfer upon the books of the corporation, so that from that date Otis, on the stock book of the corporation, appeared to be the owner. On the 16th April, 1896, W. H. Bradley purchased of the Bradley Salt Company 150 of its shares, and a transfer in due form was made by the company to Bradley of its certificate for such shares. This certificate, with a written direction to the Glen Salt Company to make the transfer, was, on the 15th May following, mailed at New York City by registered letter directed to the Glen Salt Company, at Watkins, N. Y. This letter was not received by the Glen Salt Company until May 21, 1896, and the transfer to Bradley on the books was made the 22d May, 1896. The annual election of directors was on the 26th May, 1896. Before the voting commenced, an injunction in the action of the Glen Salt Company against Walter H. Bradley was served, restraining Bradley from voting on the 150 shares above referred to, upon the ground that he had not been the owner thereof for 10 days next preceding the meeting. Thereupon an injunction in the action of Bradley Salt Company against George C. Otis was served, restraining Otis from voting on the 140 shares transferred to him by Clute, upon the ground that the transfer from Clute was void. The election proceeded, and the balance of the shares were voted; the "Otis ticket," so called, consisting of Otis, Buxton, and B. P. Gage, receiving 360 votes, and the Bradley ticket, consisting of Bradley, Morris, and W. W. Clute, receiving 350. Both parties had counsel present at the election, and after the announcement of the result the following occurred, as the record of the election shows: "It was then stipulated and agreed by all parties, all being present and assenting, that on June 6, 1896, before Hon. Walter Lloyd Smith, at his chambers in Elmira, N. Y., at 10 a. m., both injunctions should be submitted to him for his decision, and that he should have jurisdiction for that purpose, if the statute gave him such, and that review of the entire proceedings should then be had as provided by statute. On June 6, 1896, at 10 o'clock in the forenoon, a notice is hereby given by each party to the other to appear before Hon. Walter Lloyd Smith at his chambers in the courthouse annex, in the city of Elmira, N. Y., for the purpose of reviewing both proceedings and the election in general." Thereupon proceedings by petition of Bradley Salt Company and W. H. Bradley as stockholder in the Glen Salt Company were instituted in the supreme court, the petition being verified June 23, 1896, and asking that a new election be ordered, and that Bradley might be declared entitled to vote on the 150 shares referred to, and Otis declared not entitled to vote on the 140 shares. An answer to the petition was put in by the Glen Salt Company, Otis, Buxton, and Gage. On the 9th July, 1896, all the parties are before Justice Smith, the matter then being entitled "In the Matter of the Election of the Directors of the Glen Salt Company." Evidence was given on both sides upon the issue as to the 150 shares. Then or afterwards an opinion was delivered by the court to the effect that Bradley was at the election entitled to vote on the 150 shares. On the 25th July, 1896, an order was made by the justice in said matter, purporting to be made at special term at the justice's chambers, and on the consent of counsel for all parties, referring all the issues not already adjudicated to a referee to take the testimony of the parties, and report the same, with his opinion thereon. A large amount of testimony was taken before the referee, and upon the coming in of his report, and after a hearing before Justice Smith at special term, the orders appealed from were made.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-NAM, and MERWIN, JJ.

Frederick Collin, for appellants.
Herendeen & Mandeville, for respondents.

MERWIN, J.   The appellants claim that the injunction orders were not before the court for determination, and that, therefore, the orders made in the actions should be reversed.  By the stipulation made and notice given at the election, which are above set forth, it is clear that both parties then intended that both injunctions should be passed upon if possible.   The stipulation is that "review of the entire proceedings should then be had, as provided by statute," and the notice given was "for the purpose of reviewing both proceedings and the election in general."   By the statute (section 27 of the general corporation law) the application is to be made to "the supreme court."   So that, in agreeing to review as provided by the statute, it must be assumed that the parties by their stipulation agreed to appear before Justice Smith as sitting at special term at his chambers. It may be that the formality of petition and answer was not then contemplated.   To the petition, as made, a copy of the entire proceedings at the election, including the stipulation and notice, was attached, and the correctness of these was not disputed in the answer.   And when, on the 9th July, the parties appeared before the justice with the petition and answer and the papers on which both injunctions were granted, he had a right to assume that the proceeding was a continuation of the proceeding noticed for hearing before him on the 6th June previous, and that the application was to him as at special term at chambers.   That is what their conduct meant, if the design was, as it then appeared to be, that there should be an effectual consideration of all the matters involved.   Unless the injunctions could be considered, the hearing might be practically useless.   The court, at special term, had full jurisdiction of the subject-matter, and all the parties in the injunction actions were before the court.   The justice himself had granted one of the injunctions, and the other was granted by a county judge.   The court had, we think, the right to treat the proceedings before it as including a notice by the defendant in each action to vacate the injunction therein.   The position of the appellants is that "the court had the power, in the matter instituted by the petition, to determine which claimant had the right to vote the 140 shares, and which claimant had the right to vote the 150 shares."   This power would not be complete unless the injunctions were under control.   The orders should not be reversed by reason of any want of power in the court.   We therefore proceed to the consideration of the main questions, which are (1) whether Bradley, at the day of the election, was entitled to vote the 150 shares, and (2) whether Otis had the right to vote the 140 shares.

1. The decision at special term as to the 150 shares was placed by the court, in its opinion, upon the ground that the corporation was negligent in failing to obtain from the post office the registered letter in time to make the transfer 10 days before the election, and that, therefore, the corporation and the stockholders were estopped from

claiming that the transfer was not in time. Mr. Bradley lived at Meriden, Conn. He was the treasurer of the Bradley Salt Company, which was located at Warsaw, N. Y. The letter was registered and mailed by him in New York City on the 15th May, 1896. It reached Watkins on the 16th May. The Glen Salt Company have at the post office in Watkins a box or locked drawer, where the mail for the company is deposited. Upon the arrival of the registered letter on the 16th, the postmaster or his assistant, according to the custom of the office, deposited in the box or drawer of the company a card upon which was a request to call "for registered letter to your address in this office." The card did not indicate where the letter came from, or who sent it. The letter was not called for until the 21st, and there is evidence that the secretary of the company then stated to the assistant postmaster that he saw the notice in the box, but supposed it was a notice to pay box rent, and did not take it out. It was not shown that the company or any of its officers knew that there was any such letter in the office, or that any transfer was contemplated by the Bradley Company. The postmaster had no authority to deliver the letter except upon the giving of a receipt therefor. It is claimed that the case of Robinson v. Bank, 95 N. Y. 637, sustains the view of the special term. That was an action against the corporation for dividends upon stock the certificate of which had been transferred by the owner to the plaintiff, and the corporation, after actual request of the plaintiff, had refused to make the transfer upon the books without any valid reason for such refusal. It was held that the corporation had waived the requirement of a transfer upon its books, and could not take advantage of its own wrongful act in refusing to make the transfer. In Bank v. Colwell, 132 N. Y. 250, 30 N. E. 644, there was an actual request to the corporation for a transfer, but there was no transfer book, and the party was told that it was not necessary. These cases do not reach the present question. There was here no request until the corporation received the letter on the 21st. Bradley, in sending the certificate by registered letter, in effect gave the direction to the postmaster that the certificate must not be delivered to the corporation until it gave a receipt therefor. He took the chances of such delivery being made in time. In the absence of any information that such a letter was at the post office, we fail to see how the corporation is chargeable with any negligence, or how there is any basis for an estoppel.

It is further claimed by the respondents that it was not necessary that the transfer should be made upon the books 10 days before the election; that ownership, as between Bradley and the former owner, for more than 10 days before the election, accompanied by an actual transfer at any time before the election, was sufficient to authorize him to vote. By section 29 of the stock corporation law it is provided that "no transfer of stock shall be valid as against the corporation, its stockholders and creditors for any purpose, except to render the transferee liable for the debts of the corporation according to the provisions of this chapter, until it shall have been entered in such book as required by this section, by an entry showing from and to whom transferred." By section 20 of the general corporation law

the stock book is made the evidence of the right of a person challenged to vote at a stockholders' meeting, and by the same section it is provided that every member shall be entitled "to one vote for every share of stock held by him for ten days immediately preceding the election or meeting." These provisions are referred to in the case of In re Argus Co., 138 N. Y. 557, 578, 34 N. E. 388, and it is evidently there assumed that it was necessary for the transfer to be made on the stock book 10 days before the election. As between the holder of the certificate and his assignee, the transfer may operate to pass the title, but it does not determine the right of voting at elections. McNeil v. Bank, 46 N. Y. 325, 331; Thomp. Corp. § 730. In Strong v. Smith, 15 Hun, 222, the question here involved was not considered. The plain object of the 10-day provision was to enable parties interested in the elections to ascertain during that period who were stockholders, and entitled to vote. This could only be done by an examination of the stock book, and naturally, therefore, the expression "held by him for ten days" would refer to a holding as indicated by the stock book. The provisions of the general corporation law and the stock corporation law should be construed together. If stock registered upon the morning of the election could be voted upon, the usefulness of the 10-day provision, if not its main purpose, would be practically destroyed. The transfer should, we think, be entered on the stock book 10 days prior to the election. Bradley, therefore, was not entitled to vote at the election.

2. The 140 shares of stock held by Clute on the 4th March, 1896, were in three certificates. On the back of each there was an assignment of the same to Otis with authority to the company to make the necessary transfer on the books of the corporation. These are dated 4th March, 1896, and were signed by Clute on that day at the office of Mr. Reynolds. These were annexed to an agreement of the same date under seal between Clute and Otis, executed upon the same occasion. By this agreement, Clute, for value received, sold and assigned and transferred to Otis the 140 shares of stock, referred to as being annexed and forming part of the instrument, and Otis agreed to account for and pay over to Clute all dividends and profits received by him (Otis) on the stock from that date to the 4th day of March, 1899, as fast as received by him. To this agreement there was attached a guaranty, to be thereafter signed by Buxton, to the effect that Otis should, on his part, perform the agreement. There was also executed by Clute and Otis, and attached to the agreement made between Otis, Clute, and Buxton on the 20th August, 1894, a writing in and by which the agreement of 1894 was modified by making the price at which the stock might be sold under that agreement 70 cents on the dollar, with interest on the amount from May 15, 1893. There was also in this writing the following clause:

"Third. That a certain instrument, dated this 4th day of March, 1896, shall not be construed to affect the interest of the said John A. Clute in his stock mentioned therein, or in any wise operate as a termination of his interest in said contract, but for all the purposes of said contract he shall be still considered the owner of the stock therein described as belonging to him. In all other respects said annexed contract is to remain the same."

Upon the same occasion there was executed by Otis, and after-wards by Buxton, an agreement by which Otis and Buxton agreed to sell to Clute all their 360 shares of stock at any time within 20 days thereafter upon the payment to them by Clute of the sum of $29,358, it being stated that it was intended simply to give Clute the option of buying the stock of Otis and Buxton at the price named, and that Clute was not bound to buy unless he so elected. These papers, when signed by Clute and Otis, were left with Mr. Reynolds, and the option,- -the writing attached to the agreement of 1894,— and the guaranty were subsequently signed by Buxton. The option to purchase was not accepted by Clute within 20 days, and there-after the papers passed into the hands of Otis, and the transfer on the books to Otis was made on 25th March, 1896. The claim of Otis is that, upon the failure of Clute to accept the option, he (Otis) became the absolute owner of the stock of Clute, subject only to the obligation of accounting for the dividends and profits for the period of three years, and that this was the understanding at the conclusion of the negotiations on the 4th March. In other words, the claim is that Clute, in consideration of having the option for 20 days of purchasing the stock held by Otis and Buxton at the price fixed in the agreement of 1894, as modified on March 4, 1896, agreed that, in case the option was not accepted, Otis should become abso-lute owner of the 140 shares that day in form transferred to Otis, excepting only the dividends for three years. A large amount of evidence upon this subject was taken by the referee, and the con-clusion reached by him as well as by the special term was adverse to the claim of Otis. On the contrary, it was, in substance, found that Otis, in consideration of receiving from Clute the power to vote upon his stock for the term of three years, agreed to give him the option of purchasing the stock of himself and Buxton at the rate fixed by the modified agreement between the three, and that there was no agreement by which Otis was to become the owner of Clute's stock; that, in order to carry out this arrangement, the papers were drawn, a provision for the return of the stock at the end of three years being inadvertently omitted. The papers drawn and executed on the 4th March, and as subsequently signed by Buxton, are to be read together for the purpose of arriving at the intention of the parties. The clause above quoted from the writing attached to the agreement of 1894 is quite persuasive of the absence of any in-tention to have, in any event, an absolute transfer to Otis. The evidence, we think, authorized the conclusion that, as between Clute and Otis, Clute was the owner of the stock; and that the transfer to Otis, though absolute on its face, was only designed to confer upon Otis the power to vote upon it for the period of three years; was, therefore, in substance, a proxy given for a consideration. We find no good reason for disturbing this conclusion. This being the nature of the transfer, it was void, under section 20 of the general cor-poration law, where it is provided that "no member of a corporation shall sell his vote or issue a proxy to vote to any person for any sum of money or anything of value." In re Germicide Co. of New York, 65 Hun, 606, 20 N. Y. Supp. 495. It is, however, claimed by the

appellants that no one but Clute, who is not a party to these proceedings, can question the legal title of Otis to the stock, and that, whatever may be the rights or equities of Clute, the corporation or stockholders cannot question the right of Otis to vote on the stock. If the legal ownership of Otis is the result of an illegal transaction connected with an effort to control the election, and continue in Otis the control of the corporation, it would seem as if any stockholder would have the right to raise the question, and obtain the benefit of a statute designed to protect the rights generally of stockholders. Every stockholder has an interest in having only legal votes cast. The same principle that gives relief to stockholders against illegal combinations would be applicable. Ordinarily, motives are not inquired into, but, if the purpose is illegal, or the transaction is in violation of law, a different rule may well apply. See Thomp. Corp. §§ 2494, 2495; Hafer v. Railroad Co., 19 Abb. N. C. 454. Under the statute (section 20, Gen. Corp. Law) the fact that stock stands in the name of a certain person on the books of the corporation is not conclusive as to his right to vote; for it is provided that, if he has not in fact been the owner for at least 10 days next preceding the meeting, he cannot vote, although the stock stands in his name on the books of the corporation. If this disqualification could be asserted only by some adverse claimant, and not by the corporation, or any other stockholder, the object of the statute would hardly be accomplished.

We are referred by the learned counsel for the appellants to numerous cases, but they do not seem to be controlling here. In Hey v. Dolphin, 92 Hun, 230, 36 N. Y. Supp. 627, the stock in controversy was held by parties as joint owners, or as partners. In Re Argus Co., supra, it was held that a person having the legal title to stock could vote thereon, notwithstanding the existence of an executory contract which, upon certain conditions, which had not been fully performed, required its transfer to another party. That is not this case. We think that the respondents have the right to take advantage of the infirmity of the transactions between Otis and Clute, so far as they relate to the right of Otis to vote on the stock, and that the special term was right in its determination that Otis had no right to vote upon the 140 shares.

Upon the hearing before the referee, the testimony of Mr. Reynolds, who drew the writings on the 4th March, was taken, subject to objection, under section 835, Code Civ. Proc. Upon the hearing at special term all the testimony of the witness was received and considered except the conversations between the witness and Otis and Clute. The appellants claim that the whole was admissible. Mr. Reynolds was not simply a scrivener, but, as the special term had a right, from the evidence, to find, was in the position of counsel to Otis and Clute. We think the ruling was correct within the case of Root v. Wright, 84 N. Y. 72. The rule laid down in Hurlburt v. Hurlburt, 128 N. Y. 420, 28 N. E. 651, does not apply here.

The foregoing conclusions as to the respective rights of Bradley and Otis lead also to the conclusion that the election should not

have been set aside, and a new one ordered. If Bradley did not then have the right to vote on the 150 shares, the petitioners cannot complain of the result of the election.

Order reversed so far as it determines that Bradley had the right to vote on the 150 shares at the day of the election, and also so far as it sets aside the election, and provides for a new one, and awards costs; in other respects, affirmed. All concur.