(69 App. Div. 221.)

## SULLIVAN v. PARKES.

(Supreme Court, Appellate Division, First Department. February 21, 1902.)

1. CORPORATIONS—STOCKHOLDERS—MAJORITY AND INTEREST—AGREEMENT TO CONTROL COMPANY—PROXIES—DISAGREEMENT OF HOLDERS—EQUITY—INJUNCTION.

The owners of the majority of stock of a corporation agreed that they would issue irrevocable proxies representing their stock to two persons, and that such persons should vote the stock at stockholders' meetings in such manner as should seem to them for the best interests of such majority stock, and that in the event of their disagreement a third person should be selected, who should determine the question. Held, that on a disagreement of the holders of a proxy issued under the agreement as to how the stock should be voted, and failure to appoint an arbitrator, an injunction would not issue to restrain one of the owners of the stock covered by the agreement from voting his stock.

2. SAME—SALE OF STOCK—INJUNCTION.

When the owners of the majority of stock of a corporation agree that they will not sell without first offering, in writing, to sell to the other parties to the agreement on terms as favorable as the owner would be willing to accept from any other person, and that reasonable opportunity shall be offered the others to determine whether they desire to accept the stock, a complaint against one of the parties, alleging that he had sold or contracted to sell, or is about to contract to sell, some of his stock, without any statement as to the information upon which it is founded, is not sufficient to warrant an injunction restraining such sale.

Appeal from special term, New York county.

Action by John A. Sullivan against William N. Parkes. From an order continuing an injunction during the pendency of the action, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Allan McCulloh, for appellant.
Joseph F. Daly, for respondent.

INGRAHAM, J. The action is brought to restrain the defendant from "violating, voiding, nullifying, abrogating, or breaking" an agreement wherein the defendant was the party of the first part, and the plaintiff and Daniel F. Cohalan and John H. Maugham were parties of the second part, and from voting on certain stock of the Parkes Manufacturing Company, the property of the defendant, and deposited in pursuance of the provisions of the said agreement, and from selling or contracting to sell or otherwise disposing of the said stock, or any part thereof, without giving the plaintiff and the other parties to the said agreement an opportunity to buy the same as prescribed in said agreement. Upon motion the court granted a temporary injunction restraining the defendant from violating the agreement mentioned in the complaint, and from voting the stock of the Parkes Manufacturing Company in violation of the said agreement, and from selling or contracting to sell or in any way disposing of any part of said stock in said company, except as prescribed in said agreement. The agreement which the plaintiff thus seeks to enforce by injunction was executed on the 11th day of July, 1900, and recites that the parties were entitled to be, by existing contracts, or would presently become, stockholders in the Parkes Manufacturing Company, a corporation duly organized and existing under the laws of the state of Delaware, and that said parties collectively will own or control a majority of the issue of the capital stock of the said company, and that the said parties believe and have agreed that it will be to their joint and several interest and benefit that such majority of said stock should be placed in trust for an agreed term, to the end that it may, whenever necessary, be voted at the stockholders' meetings of the said company as a unit, and that thereby the proper management of the said company during the said term may be insured; and then provides that upon the issue of the said stock the defendant should deposit with the Trust Company of America, as trustee, the full sum, at par, of $137,400 of the common stock of the said company, and in like manner deposit with the said company, as trustee, all of the preferred stock of the said company which may be issued to him under and by virtue of the provisions of an agreement made between the defendant and the said Maugham and the said Cohalan, bearing date the 23d day of May, 1900. It was also provided that the parties of the second part (the plaintiff, Daniel F. Cohalan, and John H. Maugham) should in like manner, immediately upon the issue of said stock, deposit or cause to be deposited with the Trust Company of America, as trustee, such amount of the common stock of the said company as shall aggregate

not less than $151,000 at par; that all of the said capital stock should be deposited with the said trustee for the full term of 15 years, dating from the date of the last deposit with the said trustee of said stock by either of the parties to the agreement; that each deposit to the said stock shall be accompanied by an irrevocable proxy running from the owner of the record thereof to the said William M. Parkes and said John A. Sullivan, who shall represent the owners of all the said stock, and shall vote the same, as, in their discretion, may appear for the best interests of the parties to the agreement, at such general and special meetings of the stockholders of the said company as may to them (the said Parkes and the said Sullivan) seem necessary, and that each of the said proxies shall, during the whole of the said term, be renewed by the respective owners of record of all of the said stock at the expiration of each three years from the several dates thereof, and that each of the parties to the agreement shall execute, in addition to his said proxy to the said Parkes and the said Sullivan, "an irrevocable power of attorney to the Trust Company of America, trustee, authorizing, empowering, and directing the said trustee that, in the event of the failure of such holder of record to renew his proxy at the expiration of any period of three (3) years in accordance with the provisions of the clause hereof next preceding, the said trustee shall, as attorney for such holder, execute for him such proxy to the said William N. Parkes and the said John A. Sullivan, or to the successor or successors of either or both of them"; that in the event of a disagreement between Parkes and Sullivan, or between them or either of them and their successor or successors, as to the manner of voting the said stock at any such meeting of stockholders, they (the said Parkes and the said Sullivan), or either of them, should, not less than seven days before the date fixed for such meeting, select a third person to whom they should severally submit the question or questions at issue between them, and, in the manner of voting the said stock at such meeting, they should be governed wholly by the decision of the said person so selected. It was further agreed that the owners of record of the said stock, or the said trustee as attorney for them, should execute such other and further proxies as might be necessary to give effect to this clause of the agreement, and that nothing contained in such agreement should be construed to prevent the sale or hypothecation of the said stock, or of any part thereof, provided, always, that any such sale or hypothecation should be made specifically subject to the conditions of this agreement, and that in the event of any such sale the assignee of the stock sold should execute such proxies and such powers of attorney as might be required to give effect to the provisions therein. It was further agreed that in the event that either of the parties to the agreement should at any time during the said term desire to sell his stock, or any portion thereof, he should first offer in writing to sell the same to the other parties hereto upon terms as favorable as he would be willing to accept from any person or persons, and, before otherwise offering such stock, should afford reasonable opportunity to consider and determine whether he or they desire or desires to purchase the said stock.

The complaint alleges that the parties to the agreement deposited with the trust company sufficient of such stock to constitute a majority thereof, as required by said agreement, and that the parties made, executed, and delivered to the said Parkes and the said Sullivan, parties to this action, proxies whereby they were authorized and empowered to vote the whole of the said deposited stock at such general and special meetings of the stockholders of said corporation as to them (said Parkes and said Sullivan) should seem necessary. A copy of the proxy executed by the defendant is annexed to the complaint, was dated on the 8th day of August, 1900, and was for a period of three years from the date thereof; and at the same time the defendant executed a power of attorney authorizing the said trust company to execute a proxy to said Parkes and said Sullivan in the event of his failure to renew the proxy at the expiration of the three years. It was further alleged that a meeting of the stockholders of the said corporation, the Parkes Manufacturing Company, was duly called for the 27th day of November, 1901; that on the 7th day of October, 1901, the plaintiff served upon the defendant Parkes a written notice that, in view of the differences of opinion as to the manner of voting said stock, he (plaintiff) proposed three persons, one of whom was to be selected as arbitrator under the provisions of the said agreement; that the defendant neglected and refused to select either of said persons suggested, or to suggest to the plaintiff the name of any person whom he would have act in such capacity as arbitrator. It was further alleged that the said defendant "threatens to and intends to violate, nullify, ignore, and break the said agreement of July 11, 1900," and to vote the stock so deposited by him, and that the defendant has sold or contracted to sell, or is about to contract to sell, a part or the whole of his stock so deposited with the trust company as aforesaid, without having offered to sell the same to the other parties to the agreement, with the further allegation as to the irrevocable damage and injury to the plaintiff; that the defendant is insolvent and is financially irresponsible, and unable to respond to any judgment for damages which the plaintiff might obtain against him in an action at law; and that he has no adequate remedy at law.

The defendant, by the answer to the complaint and affidavit submitted in opposition to the motion, admitted the making of the contract, the deposit of the stock, the execution of the proxies, and the power of attorney; denied that he has contracted to sell, or is about to contract to sell, any part of his stock in the said corporation; alleged that he had devoted his time, energy, and money to the invention of certain improvements in embroidery machines and in sewing machines, and that he (defendant) has had 15 years' experience in the sewing machine business, and has full practical knowledge as to said business, and the placing of machines on the market; that neither the plaintiff nor the other parties to the agreement has or ever had any practical knowledge or experience in the manufacture of embroidery, or placing the same upon the market; that after the defendant had secured patents on a part of the inventions, and prior to May, 1900, the plaintiff and John H. Maugham and

Daniel F. Cohalan represented to the defendant that they were able to promote and finance a corporation which would be able to take over the embroidery machine patents of the defendant, and manufacture of goods thereunder, and that in that connection they would find all necessary working capital therefor; that in pursuance of those representations an agreement was entered into under which a corporation was formed to take over such patents; that in pursuance of that agreement said Parkes Manufacturing Company was incorporated under the laws of the state of Delaware, with a capital of $100,000 of preferred stock and $500,000 of common stock. The defendant admits the receipt of a letter proposing the names of three persons from whom an arbitrator could be selected, but neither of the said persons was known to the defendant, and upon this ground he was unwilling to accept either of them as arbitrator; alleges that on the following day the defendant suggested to the plaintiff two names, one of whom could be arbitrator, but that the plaintiff failed or refused to select either of said parties as arbitrator; that dissensions exist among the directors, largely due to the fact that they invested capital in said company in ignorance of the existence of said trust agreement sought to be enforced; that said stockholders have contributed $39,000 out of $50,000, the total amount of capital in cash which has thus far been provided for said company; that neither the plaintiff nor his two associates have provided the necessary capital to enable said corporation to proceed with the purposes of its organization, and that said trust agreement sought to be enforced prevents their obtaining further capital for the business, and if such agreement is enforced it will bring the affairs of said corporation to a standstill, and result in a failure on the part of the defendant to realize any benefit from the years of labor which he has expended in perfecting the patents transferred to said corporation.

In reply, the plaintiff denies the statements as to the other stockholders being dissatisfied with the present management of the company; denies that the plaintiff and his associates have failed to provide the capital agreed to be provided by them; and alleges that they have furnished or procured large sums of money for the corporation,—failing, however, to state the amounts actually paid to the corporation by the plaintiff or his associates.

The real question presented upon this appeal is whether this contract is one that the courts will specifically enforce. It will be noticed that there are no negative clauses in this contract. Neither of the parties to it agreed that they would not vote upon the stock standing in their name, and which had been deposited with the trust company. The agreement provides for an irrevocable proxy running from the record owner of the stock to Parkes and Sullivan, who were to represent the owners of all the said stock, and were to vote the same as they should think for the best interests of the parties to the agreement; but there is no specific undertaking that the defendant would not revoke it, and exercise the right of an owner of the stock to vote at all meetings of the stockholders. We might infer from the provisions of this agreement that it was the intention of the

parties that the right to vote upon all of this stock should be for 15 years vested in the parties to this action; but there is no provision which provides for the contingency that has actually happened,— that the parties to the action are unable to agree upon how the stock should be voted, and on a person to determine that question. The proxy actually executed by defendant, and the power of attorney which authorized the trust company to execute on behalf of the defendant a proxy to vote upon his stock so deposited under the agreement in the event that the defendant should fail to give such proxy, confer no authority to grant an irrevocable proxy, and contain no provision to justify the company, as the attorney for the defendant, in granting a proxy in form other than that which was executed by the defendant, and which would be a proxy in the ordinary form, and clearly revocable. In the agreement executed by the parties there is not one word that would suggest any covenant or obligation on the part of the defendant to resign his right to vote upon his stock in case the parties to this action could not agree as to how the stock should be voted, or that he would not exercise his legal right of voting upon the stock, unless it can be inferred from the agreement to give an irrevocable proxy to vote. The fourth clause of the agreement, which provides for the giving of the proxy, provides that Sullivan and Parkes shall vote the same, as, in their discretion, may appear for the best interest of the parties, at such general and special meetings of the stockholders of the said company as may to them seem necessary. This is a joint power, and they were given a joint proxy to vote on the stock. When Parkes and Sullivan did not deem it necessary that they should exercise this power under this joint proxy, there is no provision in the agreement which would prevent the holders of the stock from voting as they deemed best. The provision of the sixth clause of the agreement that, in the event of a disagreement as to the manner of voting the stock, a third person should be selected, who should determine the question at issue, cannot be specifically enforced; and if the parties disagreed how the stock should be voted, and declined to appoint an arbitrator who should determine the question, the whole scheme by which these two parties were to vote for the stockholders who had united in the agreement was rendered nugatory. The arrangement for the joint vote had fallen through, and it was impossible of enforcement. No way of voting the stock then remained, except for the individual stockholders to vote as they pleased, and certainly nothing in the agreement suggests that under those conditions the stock was to be unvoted. I do not think that where the arrangement that had been made for a joint control of this stock had fallen through and become impossible of performance, a court of equity would be justified in preventing the stock deposited under the agreement, which represented a majority of the stock of the company, from being voted on; thus throwing the control into the hands of a minority of the stockholders. The only obligation assumed by this defendant is that he would issue an irrevocable proxy. The breach of the agreement alleged is that having issued a proxy which on its face is revocable, and being unable to agree with the other person

named in proxy, he proposes to exercise the right of the holder of
the stock to vote upon it. This would violate no provision of the
contract, and would not justify an injunction restraining either party
to it from voting on the stock, when those to whom the proxy had
been issued failed in any way to exercise the privilege conferred
upon them.

It is not necessary for us to determine the question as to the valid-
ity of an agreement by a stockholder to transfer his right to vote
on the stock of a corporation owned by him for a fixed period, and
that during that time he would not exercise his right to vote. Upon
that question the decisions of the courts are not at all uniform.
Any agreement that would affect the absolute ownership of this
stock for a period of 15 years would be void under the provisions
of section 2 of the personal property law (chapter 417 of the Laws
of 1897), and an agreement that prevents the owners of shares of
stock from exercising the usual privilege of ownership, or so ties
up such stock as to prevent its free alienation, would seem to be void
under this provision of the statute. To construe this agreement as
construed by the court below would seem to suspend the absolute
ownership of this stock for a period during which it was to remain
deposited with the trust company; for during all that period the
defendant's right to his stock and to exercise the ordinary privileges
of ownership was suspended, and, while he had a right to sell the
stock, it was to be a sale subject to an irrevocable power of attorney,
which would prevent the purchaser of the stock from exercising one
of the essential rights of ownership, viz., that of voting on the stock.
Such a covenant would seem to be a restriction or suspension of
one of the essential elements of ownership, and would seem to be in
violation of the spirit, if not the letter, of the statute. This question
does not seem to be determined by Williams v. Montgomery, 148 N.
Y. 526, 43 N. E. 57. It may also be said that such an agreement will
not be enforced in this state, as contrary to the declared policy of
the state in relation to its domestic corporations. This is a foreign
corporation, organized under the laws of the state of Delaware, and
is not, therefore, directly controlled by section 21 of the general cor-
poration law (chapter 687 of the Laws of 1892). That section pro-
vides that the members of a corporation entitled to vote at any
meeting may so vote by proxy, but provides that every proxy shall
be revoked at the pleasure of the person executing it; and a provi-
sion such as is here contemplated, relating to a domestic corporation,
would be void, as in violation of this section. This state, having
thus declared its general policy as to proxies in relation to domestic
corporations, would not enforce an agreement relating to a proxy
of a foreign corporation to be voted on in this state, in violation of
its general policy thus declared. It is not necessary, however, to
determine on this appeal how far this agreement is void as against
the public policy of the state, as we think there is no provision which
restricted the right of one of the owners of stock covered by this
agreement from voting on the stock, in case the persons to whom
the proxies had been issued were unable to agree as to the way that
the stock should be voted. There was no evidence that the defend-

ant had sold or intended to sell his stock in violation of the agreement. The plaintiff says he is informed and believes that defendant "has sold or contracted to sell, or is about to contract to sell, a part or the whole of his said stock so deposited, to some party or parties strangers to said agreement." There is no statement of the information upon which this allegation is based, and the defendant denied, that he has sold or intends to sell his stock. Upon this allegation the court was not justified in granting an injunction restraining the defendant from selling his stock.

It follows that the order appealed from must be reversed, with $10 costs and disbursements, and the motion to continue the injunction denied, with $10 costs. All concur; PATTERSON, J., in result.