**FAIRMONT FOODS COMPANY,**
Plaintiff,

v.

Filomena **MANGANELLO** as **Executrix** of the Last Will and Testament of Ralph Manganello and as Guardian of the property of Betty Ann Manganello, Rita Yodice and Anna Guiliano as Executrices of the Last Will and Testament of Nicola Gentile, Marie Prezzano as Executrix of the Last Will and Testament of Joseph Prezzano, Walter W. Pegalis, Origena Pizza Crust Co., Inc., and Anthony Filiti, Defendants.

No. 68 Civ. 5201.

United States District Court
S. D. New York.

June 27, 1969.

16.   Dickinson v. United States, *supra* at 391, 74 S.Ct. 152.

Marshall, Bratter, Greene, Allison & Tucker, New York City, for plaintiff, by Morton S. Robson, New York City, of counsel.

Schulz, Fay & D'Amico, Bronx, N. Y., for Filomena Manganello, Rita Yodice and Anna Guiliano, by Joseph V. D'Amico, and Louis J. Shaw, Bronx, N. Y., of counsel.

Whalen, O'Neill & Pillon, New York City, for Marie Prezzano, by James T. Whalen, New York City, and Martin Hirsch, Mount Vernon, N. Y., of counsel.

Schachter & Wiseman, New York City, for Origena Pizza Crust Co., Inc., by

Samuel U. Wiseman, and Louis Schachter, New York City, of counsel.

## MEMORANDUM

POLLACK, District Judge.

Motions are before the Court to dismiss or alternatively, to stay this action; or as a further alternative to direct a more definite statement of plaintiff's claims.

This is a diversity case and involves no federal question. It is unclear from the record where the case arose and consequently it is unclear what law should govern. The first Count calls upon the Court to exercise its equity powers by decreeing specific performance of an alleged agreement to cause a Canadian corporation to sell its assets to the plaintiff. The second Count seeks, as an alternative, the award of damages for breach of such agreement. The third Count seeks damages from those charged with interfering with and inducing breach of such agreement.

The facts given herein are those claimed by the parties respectively and while they are assumed, no finding thereof is made for the purposes of these motions.

According to the plaintiff, a Delaware corporation, the defendant-majority stockholders of a Canadian corporation, Origena Pizza Crust Co. of Canada, Ltd. ("Origena Canada" hereafter) who also constituted three of the five members of the board of directors and one of whom was the president, agreed in November, 1968 to cause that corporation to sell all of its assets to plaintiff, to promptly call a meeting of stockholders and at such meeting "to propose the ratification of the sale of Origena Canada's assets to plaintiff and vote their stock in favor of such sale." The stockholder defendants breached their agreement by failing and refusing to hold such a meeting.

Plaintiff further represents that the board of directors of Origena Canada voted approval of the sale; that a notice of meeting of stockholders was sent to the minority stockholders but the meeting was never held and consequently, of course, the ratification of the sale of the corporate assets to plaintiff was not proposed nor the stock of the defendant stockholders voted in favor of the sale.

The defendants contend hereon that while there may have been complex and complicated negotiations, the parties never reached an agreement for the sale to the plaintiff of all the corporate assets. Instead, about December 19, 1968, the stockholder defendants together with one of the minority stockholders optioned all of their shares in Origena Canada to the corporate defendant, a New York corporation, known as Origena Pizza Crust Co., Inc. ("Origena New York" hereafter). The principal stockholder and officer of that corporation is the defendant Anthony J. Filiti. The optionors agreed that they would not sell their stock to others; that they would not vote as directors of Origena Canada for the sale of its assets nor would they participate in any plan to sell those assets during the one year term of the option agreement. The business of the Canadian corporation was to be operated during the term of the option by Origena New York.

Some time in February, 1969, the defendant stockholders sold their shares of Origena Canada to defendant Origena New York and resigned their posts as directors and officers of the Canadian corporation.

The instant action was commenced on December 31, 1968. Origena Canada is not named as a party nor has it appeared herein. Three weeks later, on January 22, 1969 plaintiff commenced a suit against Origena Canada in the Supreme Court of Ontario, Canada, seeking specific performance of an agreement with the Canadian corporation itself for the sale of its assets to plaintiff or in the alternative, seeking damages for breach of that agreement. According to the plaintiff's papers herein, the Canadian suit may turn on whether Canadian law requires stockholder consent to such a sale. In its Canadian pleading, the plaintiff expressly "denies that it was aware

or that it was contemplated when the agreement was concluded, that the agreement was to be subject to shareholder approval and that the Plaintiff pleads that the agreement is binding on the Defendant [Origena Canada] regardless of whether or not it has received shareholder approval".

## I.

The relief which the plaintiff demands under the first Count of the complaint is to declare null and void the sale by the defendant stockholders of their stock of Origena Canada to Origena New York and Anthony Filiti and to direct the latter two to reassign and transfer to the defendant stockholders all of the stock of Origena Canada purchased by them subsequent to the agreement with the plaintiff; to direct the defendant stockholders to call a meeting of the shareholders of the Canadian corporation in accordance with its by-laws; to direct such defendants at such meeting to propose ratification of the agreement to sell the Canadian corporation's assets to the plaintiff; and to direct such defendants to vote their stock at such meeting to ratify such agreement.

In the alternative, under the second Count, plaintiff demands judgment against the shareholder defendants for their alleged breach of contract in a sum of money claimed as the value of the breach.

■ As a general rule a Court other than the domiciliary Court will decline to interfere with corporate administration of a non-joined foreign corporation and will decline to direct or control the internal conduct of corporate meetings and the votes of directors or stockholders thereat.

"But it is well settled that jurisdiction in any case will be declined either in the absence of jurisdiction in the strict sense or where a determination of the rights of litigants involves regulation and management of the internal affairs of the corporation dependent up-

on the laws of the foreign State or where the court in which jurisdiction is sought is unable to enforce a decree if made or where the relief sought may be more appropriately adjudicated in the courts of the State or country to which the corporation owes its existence."

(Langfelder v. Universal Laboratories, 293 N.Y. 200, 204, 56 N.E.2d 550, 552, 155 A.L.R. 1226) *

■ Plainly, in this suit at the instance of a foreign corporation plaintiff and in the absence of Origena Canada, a party whose presence is indispensable in respect of a direction to hold and conduct a corporate meeting, it would be inappropriate for this Court to retain jurisdiction of the first Count of the complaint.

The law of Ontario, Canada, would have to be resorted to for guidance on matters of the corporate administration of such a meeting and the forum court would have to yield thereto leaving no advantage to be gained by exercising jurisdiction here.

A further reason for deferring to the domiciliary court may lie in the serious doubt of the sufficiency of the claim in the first Count under New York law.

■■ This Court is bound to determine the law applicable in this diversity case in accordance with the choice of law rules of the State of New York. Strubbe v. Sonnenschein, 299 F.2d 185, 188, 97 A.L.R.2d 1386 (2d Cir. 1962); Hausman v. Buckley, 299 F.2d 696, 700, 93 A.L.R. 2d 1340 (2d Cir. 1962). The New York courts in this contract action would apply the law of "the jurisdiction 'most intimately concerned with the outcome of the particular litigation'"—that is, the so-called "contacts" theory of choice of law. Auten v. Auten, 308 N.Y. 155, 161, 124 N.E.2d 99, 102, 50 A.L.R.2d 246 (1954).

There is no mention in the papers before the Court where the negotiations between plaintiff and defendant stockhold-

* See, Weiss v. Routh, 149 F.2d 193, 195, 159 A.L.R. 658 (2d Cir. 1945).

ers took place, where the alleged contract was executed, or where the performance of its terms was allegedly to occur. Counsel for one of the defendants at oral argument hazarded his guess that "[a]s far as I can determine, all negotiations probably took place in Canada * * . * "; but on such a readily ascertainable matter probabilities are not enough. As the facts stand now, New York and Canada are equally likely loci of the purported agreement.

> "Though new Rule 44.1 [Fed.R.Civ.P.] establishes that courts may, in their discretion, examine foreign legal sources independently, it does not require them to do so in the absence of any suggestion that such a course will be fruitful or any help from the parties."
>
> Bartsch v. Metro-Goldwyn-Mayer, Inc., 391 F.2d 150, 155, n. 3 (2d Cir.), cert. den. 393 U.S. 826, 89 S.Ct. 86, 21 L.Ed. 2d 96 (1968).

Under New York law, there is a strong probability that the contract alleged in the complaint is illegal as constituting a sale of a vote and if so, it would not be enforced. New York Business Corporation Law, McKinney's Consol. Laws, c. 4, §§ 609(e), 620, 621. Although these statutes permit voting agreements between shareholders, the plaintiff herein is an outsider, not a shareholder and asserts an agreement with shareholders to vote their stock as required by an outsider. Such an agreement does not fall within any of the authorized categories and is void. Matter of Glen Salt Co., 17 App.Div. 234, 244, 45 N.Y.S. 568 (3rd Dept.), aff'd 153 N.Y. 688, 48 N.E. 1104 (1897).

> "There of course is no doubt that it is illegal for a stockholder of a corporation to sell his vote, and if it clearly appeared upon the face of the complaint that plaintiff was suing for the agreed purchase price on such a sale the complaint could be dismissed upon motion * * *."
>
> Morgenstern v. Cohon, 285 App.Div. 1124, 140 N.Y.S.2d 427 (First Dept. 1955) (adopting the language of the Supreme Court, New York County at Special Term, January 27, 1955; and see opinion per Rabin, J., dissenting, 285 App.Div. at pp. 1124–1125, 140 N.Y.S.2d 427); Morgenstern v. Cohon, 2 N.Y.2d 302, 160 N.Y.S.2d 633, 141 N.E.2d 314 (1957) (by implication), rev'g A.D.2d 330, 149 N.Y.S.2d 766 (1st Dept. 1956).

An action is pending in Canada by the plaintiff to compel the transfer of the very corporate assets sought by this suit. That action will or can determine whether the plaintiff is entitled to the relief sought herein; of course, it may not.

The congeries involved in directing the performance of corporate acts so as to satisfy the law of the domicile of a foreign corporation, particularly in the absence from the suit of the corporation which must convene and conduct the corporate meeting sought, are sufficiently troublesome to make it advisable in the efficient and just administration of the court's business to apply the doctrine of noninterference with a matter of corporate administration. Rogers v. Guaranty Trust Co., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652 (1933).

The Supreme Court in Koster v. Am. Lumbermens M. C. Co., 330 U.S. 518, 525–526, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), has appositely said in a diversity suit seeking equitable relief which faced dismissal for reasons of *forum non conveniens:*

> "Thus, such a litigation brings to the court more than an ordinary task of adjudication; it brings a task of administration; * * *."

Quoting Rogers v. Guaranty, *supra, Koster* said (p. 528, 67 S.Ct. p. 834):

> " 'But it safely may be said that jurisdiction will be declined whenever considerations of convenience, efficiency and justice point to the courts of the state of the domicile as appropriate tribunals for the determination of the particular case.' 288 U.S. at pages 130–131, 53 S.Ct. 295. There was disagreement in that case as to whether the facts warranted exercise of the discretion but little as to the general

rule by which discretion is governed and none as to existence of the power of the court."

## II.

■ The second Count stands on a different footing. It seeks only money damages for breach of the alleged contract whose validity may involve the resolution of a question of conflict of laws. The determination of a conflict of laws question does not deprive a Court of subject matter jurisdiction or spell interference with the internal administration of a foreign corporation or justify dismissal on *forum non conveniens*. Williams v. Green Bay & Western R. Co., 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 311 (1946); Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

Moreover, the present application is not sufficiently developed so as to be treated as one for summary judgment under Rules 12(b) (6) and 56, Fed.R.Civ.P. As presented at this time, the conflict between the plaintiff's Canadian pleading and the complaint herein on the matter of shareholder approval, raises an issue of fact which the Court cannot resolve merely on the papers.

Even though it is initially assumed that Canadian law is the same as that of New York, which assumption may spell the insufficiency in law of the contract, *supra* p. 836 any party may challenge that assumption at any stage of the litigation simply by giving "reasonable written notice" of his or its intent to raise the issue. Rule 44.1, Fed.R.Civ.P. Consequently, it is open to the plaintiff to show if it can, (1) that the facts would lead the New York courts (under the "contact" theory) to apply Canadian law, (2) that the contract as alleged is permissible and enforceable under Canadian law, and (3) that the New York courts would not find such Canadian law so contrary to their own public policy that they would refuse to enforce it. Compare Sullivan v. Parkes, 69 App.Div. 221, 230, 74 N.Y.S. 787 (1st Dept.1902) with Loucks v. Standard Oil Co., 224 N.Y. 99, 110–112, 120 N.E. 198 (1918).

## III.

■ Defendants have also moved pursuant to Rule 12(b) (3) to dismiss the second and third Counts for improper venue, relying on the doctrine of *forum non conveniens*. Surprisingly enough, whether the New York doctrine of *forum non conveniens* should be applied in this diversity case or whether the federal doctrine controls is evidently still an open question. Thomson v. Palmieri, 355 F.2d 64, 66–67 (2d Cir. 1966); *but cf.* Note, 58 Col.L.Rev. 234, 238–241 (1958). In the instant suit, however, the application of either the State or the federal doctrine leads to the same conclusion: the forum chosen by the plaintiff cannot be disturbed.

Plaintiff has alleged hereon that the defendants are citizens and residents of the State of New York and are amenable to process only within this state. Therefore the doctrine of *forum non conveniens* is not applicable to the second and third Counts. In Gulf Oil Corp v. Gilbert, 330 U.S. 501, 506–507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1946), the Supreme Court said, in respect of the federal doctrine:

"In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them."

Moreover, even were the defendants amenable to process in Ontario, Canada, they have not demonstrated such a compelling case of inconvenience as to require dismissal under the federal doctrine:

"Whether jurisdiction should be declined is determined by balancing conveniences, but the plaintiff's choice of forum will not be disturbed unless the balance is strongly in favor of the defendant. * * * An American citizen does not have an absolute right under all circumstances to sue in an American Court. * * * However, where, as here, application of the doctrine of *forum non conveniens* would force an American citizen to seek re-

dress in a foreign court, courts of the United States are reluctant to apply the doctrine."

Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 645–646 (2d Cir. 1956); Maybruck v. Haim, 290 F.Supp. 721, 725 (S.D.N.Y.1968); Ciprari v. Servicos Aereos Cruzeiro do Sul, S. A., 232 F.Supp. 433, 443 (S.D.N.Y.1964).

Under the New York doctrine of *forum non conveniens,* a New York court is bound to entertain a tort claim (whether arising in the State or elsewhere) when either the plaintiff or the defendant is a resident of the State. de la Bouillerie v. de Vienne, 300 N.Y. 60, 89 N.E.2d 15, 48 A.L.R.2d 798 (1949); Varkonyi v. S. A. Varig, 22 N.Y.2d 333, 344, 292 N.Y.S.2d 670, 239 N.E.2d 542, n. 3 (1968) (separate opinion, per Keating, J., concurring in part and dissenting in part).

Accordingly, under either the federal or the State doctrine, plaintiff, if its claims are sufficient in law, is entitled to litigate its second and third claims in this Court.

### IV.

■ Plaintiff's third Count for inducing breach of the agreement of the stockholder defendants states a tort claim against defendants Origena New York and Anthony J. Filiti which is cognizable under New York law. Hornstein v. Podwitz, 254 N.Y. 443, 173 N.E. 674, 84 A.L.R. 1 (1930); Consolidated Tel. Answ. Serv. Corp. v. We-Answer Phones, Inc., 22 A.D.2d 785, 254 N.Y.S.2d 170 (1st Dept. 1964); State Enterprises, Inc. v. Southridge Cooperative, Section 1, Inc., 18 A.D.2d 226, 238 N.Y.S.2d 724 (1st Dept. 1963).

The trier of facts may find that the negotiations between plaintiff and the shareholder defendants never reached the stage of contractual agreement and yet, nonetheless, might find these two defendants liable to plaintiff for tortious interference with pre-contractual relations. "A cause of action has also been recognized where a party *would* have received a contract but for the malicious, fraudu-

lent and deceitful acts of a third party * * *." Union Car Advertising Co. v. Collier, 263 N.Y. 386, 401, 189 N.E. 463, 469 (1934); Williams & Co. v. Collins Tuttle & Co., 6 A.D.2d 302, 307, 176 N.Y.S.2d 99 (1st Dept. 1958). Moreover, where a contract exists, it has been stated by New York courts that:

> "It is not material whether the contract of the plaintiff with Seagraves & Wilson was binding upon them or not, the evidence established beyond all question that they would have fulfilled it but for the false and fraudulent representations of the defendants."

Benton v. Pratt, 2 Wend. 385, quoted and followed in Rice v. Manley, 66 N.Y. 82 (1876)].

### V.

■ Origena New York moves, in addition, pursuant to Rules 12(b) (7) and 19 to dismiss the third Count for failure to join an indispensable party, namely Origena Canada. Under Rule 19, the initial question is whether Origena Canada is a necessary party (one who "shall be joined"); if it is, the next question is whether, in the absence of that party, the action must be dismissed ("the absent person being thus regarded as indispensable"). See, generally, Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed. 2d 936 (1968).

It is obvious that complete relief without risk of multiple or conflicting liability can be accorded between the parties presently before the Court. A further factor to be considered, under Rule 19(a) (2) (i), is whether adjudication of the third Count without the presence of Origena Canada will "as a practical matter impair or impede" the ability of the latter to defend in the Canadian litigation. This is but one of several criteria applicable; and, in view of the fact that plaintiff, in order to recover under the third Count, may not have to prove either the existence of an agreement or the existence of an enforceable

agreement in respect of the sale of Origena Canada's assets, there has been no showing of potential and probable prejudice hereon sufficient to warrant the relief requested.

## VI.

Origena New York further moves for an order staying the proceedings in this suit pending the outcome of the Canadian litigation, which was commenced three weeks after the complaint herein was filed. It contends that plaintiff has created a multiplicity of suits in the nature of a harassment and that the instant suit is brought, in reality, against the potential witnesses in the Canadian litigation.

■■■ There is no rule of law preventing two *in personam* suits involving the same parties, even if the claims and issues are identical, from proceeding concurrently in different courts. Kline v. Burke Constr. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922), Ferguson v. Tabah, 288 F.2d 665, 672 (2d Cir. 1961). The granting of a stay under such circumstances is a matter of judicial discretion depending upon an equitable and practical assessment of the relevant circumstances. Ferguson v. Tabah, 288 F.2d 665, 672 (2d Cir. 1961). However, where, as here, neither the issues nor the parties in the two suits are identical, there is no justification for this Court to intervene.

## VII.

■■■ Alternatively, Origena New York moves pursuant to Rule 12(e), Fed. R.Civ.P., for a more definite statement of the complaint. Rule 12(e) "is designed to strike at unintelligibility rather than want of detail." The motion will be denied if the complaint "fairly notifies the opposing party of the nature of the claim. * * *" 2A Moore's Federal Practice ¶ 12.18 at p. 2389. The evidentiary details sought by this application can more appropriately be obtained through pre-trial discovery procedures. In these circumstances, "there is no requirement under the Rules that plain-

tiff provide a bill of particulars" in its complaint. Michael v. Clark Equipment Co., 380 F.2d 351, 352 (2d Cir. 1967).

## VIII.

Accordingly, the first Count of the complaint is dismissed and defendant's motions directed toward the second and third Counts are, in all respects, denied.

Settle order on notice returnable not later than July 3, 1969. Counsel are to confer and agree if possible on the form of the appropriate order to be submitted.