LORD v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES et al.

(Supreme Court, Special Term, Nassau County.   May 26, 1905.)

**1. INSURANCE COMPANY—CHARTER—AMENDMENT—RESERVATION OF POWER — STATUTES—CONSTRUCTION.**

Laws 1853, p. 887, c. 463, authorized the incorporation of stock life insurance companies. Section 11 (page 890) made companies organized under the act subject, except as to annual statements and other matters therein otherwise specially provided for, to all provisions of the Revised Statutes in relation to corporations, so far as applicable. No provision of the act expressly reserved the power to alter or amend the charter of any company formed thereunder. 1 Rev. St. p. 600, § 8, provided that the charter of every corporation should be subject to alteration, suspension, and repeal, in the discretion of the Legislature. *Held*, that, a contention that 1 Rev. St. p. 600, § 8, was not applicable to a corporation organized under Laws 1853, p. 887, c. 463, because it was "otherwise specially provided" by section 20 (page 896) of the act that the charters of companies organized thereunder should continue until repealed, was untenable.

**2. SAME.**

In the absence of language reserving the power to amend and repeal, or of language clearly inconsistent and in conflict with such reservation of power, the general provisions of 1 Rev. St. p. 600, § 8, that the charter of every corporation shall be subject to alteration, suspension, and repeal, in the discretion of the Legislature, are a part of every statute under which a corporation may be formed, qualifying the act, entering into and forming a part thereof; and in view of Laws 1853, p. 887, c. 463, authorizing the incorporation of stock life insurance companies, providing (section 20 [page 896]) that every charter created by or under the laws of the state for the purposes in the act set forth shall continue until repealed, and section 11 (page 890), providing that companies formed thereunder shall be subject to all the provisions of the Revised Statutes in relation to corporations, so far as applicable, except as to annual statements and other matters in the act otherwise specially provided for, and in view of the fact that the act contains no provision inconsistent with such reserved power, and does not otherwise provide, the charter of a company formed under the act continues until repealed, subject to the statutory reserved power, within constitutional limitations, to alter the charter.

**3. SAME—CONSTITUTIONAL LAW.**

Const. 1846, art. 8, § 1, and Const. 1894. art. 8, § 1, providing that corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the Legislature, the objects of the corporation cannot be obtained under general laws, and that all general laws and special acts passed pursuant thereto may be altered from time to time or repealed, affords no authority for amending the charter of a corporation.

**4. SAME—ADOPTION OF AMENDMENT—SUFFICIENCY.**

Insurance Law (Laws 1892, p. 1955, c. 690) § 52, providing that every domestic corporation may, by a vote of the majority of its directors, accept the provisions of the chapter, and amend its charter to conform to the same, and that every domestic corporation may amend its charter by inserting therein any matter which might have been originally inserted, contemplates corporate action by the board of directors only; and hence an amendment merely assented to by owners of a majority of the shares of stock, without a corporate meeting having been held, is not binding on the minority stockholders.

**5. SAME—PROPERTY RIGHTS.**

In an election of directors of a stock corporation, where the charter does not otherwise provide, a share of stock is a voting unit; and, in the

absence of some controlling statutory charter or by-law restriction, the right of a stockholder to vote his shares at corporate elections is an incident of ownership of the shares, inhering to the holder under the principles of the common law, and is in the nature of property.

6. SAME—CONSTITUTIONAL LAW—DEPRIVATION OF PROPERTY RIGHTS.

A stock life insurance company was formed under Laws 1853, p. 887, c. 463, authorizing companies formed thereunder to provide by charter the mode of exercising their corporate powers, the manner of electing directors and officers, and the time of their election. Its charter provided that the shares of its capital stock should be personal property; that the holders might receive a semiannual dividend not to exceed 3½ per cent.; that the earnings and receipts of the company should be accumulated; that the corporate powers should be vested in a board of 52 directors, and should be exercised by them and such officers and agents as they might appoint and empower; that they should elect annually from among their number a president; that each member of the board should be the proprietor of at least 5 shares of stock; that the number might be reduced by its action to not less than 24; that directors should be elected by ballot, a plurality of votes electing; that every stockholder should be entitled to one vote for every share of stock held by him, and that the vote might be given in person or by proxy; that the board, after giving notice at the two previous meetings, might, by a vote of three-fourths of all the directors, provide that each life policy holder who should be insured in not less than $5,000 should be entitled to one vote, but that such vote should be given personally and not by proxy; that the business should be conducted on the "mutual plan"; and that each policy holder should be credited with an equitable share of the net surplus after its ascertainment by the officers. The company's business resulted in the accumulation of a surplus. *Held*, that a proposed amendment of the charter providing that the board of directors might be diminished to 28; that the directors, each of whom should be a policy holder or a proprietor of at least five shares of the capital stock, should be chosen by ballot by the stockholders and policy holders of the company, six vacancies occurring annually to be filled by a plurality vote of the stockholders, and the other seven to be filled by a plurality vote of the policy holders—each policy holder, having been such for 12 months prior to the time of the election, being entitled to one vote, which might be given in person or by proxy—as to stockholders objecting, and who claimed an interest in the surplus, is repugnant to the federal and state constitutional provisions forbidding the deprivation of property without due process of law.

Suit by Franklin B. Lord against the Equitable Life Assurance Society of the United States and others. On motion to restrain pendente lite the adoption, execution, filing, and effectuation by the board of directors of the society of a proposed amended charter. Motion granted in part.

Edward H. Shepard and Henry De Forest Baldwin, for plaintiff.
William B. Hornblower, Adrian H. Joline, William N. Cohen, and Bainbridge Colby, for defendant society.
Samuel Untermyer, for defendants McIntyre and Hyde.
George Zabriskie, for defendants Morse and Kennedy.
Fredk. S. Duncan, for defendant De Navarro.

MADDOX, J. The right and the power of control, unless restricted by the owner's act or by operation of law, are elements and attributes of property; and this action involves the management and control, whether by the stockholders alone, or by the policy

holders and stockholders conjunctively, of the defendant society, a stock corporation created in 1859 under and pursuant to a general law (chapter 463, p. 887, of the Laws of 1853, and the amendments thereto), "to make insurance upon the lives of individuals, and every insurance appertaining thereto, or connected therewith; and to grant, purchase, or dispose of annuities."

Plaintiff seeks pendente lite to restrain the adoption, execution, and filing, and the effectuation by the board of directors of the Equitable Society, of a proposed amended charter, having for its main purpose what has come to be familiarly known as the mutualization of the corporation—the conferring upon all of its policy holders of the right, in person or by proxy, to vote for and to elect a majority of the directors of the company; thus working a change in the manner of control of the corporate powers of the company— a radical change from the provisions of the present charter as to the constitution of the board, and also as to the manner of electing a majority of the directors.

The importance of this motion is very great, and its serious character to all concerned is fully appreciated by the court. As with every question presented to a court for solution, the motion here should not be decided one way or the other without full and careful consideration, thought, and study, and then with great caution, lest irreparable injury be unwittingly done by reason of the erroneous granting or withholding of the relief sought. An injunctive order should not in any event be granted, unless to prevent some present and immediate injury, of an irremediable character, which would follow, and by reason of which injury those seeking such injunctive relief would suffer great damage and a grave wrong, were it not granted.

By the statute above referred to it was enacted, among other things, that "no company shall be organized under this act for the purposes mentioned in the first department [and such were the purposes of the defendant society] with a less capital than one hundred thousand dollars," to be invested in the stocks therein defined, and that securities to a like amount shall be deposited with and held by the State Comptroller "as security for policy holders" (section 6, c. 463, p. 888, Laws 1853, amended by chapter 551, p. 1029, Laws 1853); that the charter shall set forth "the mode and manner in which the corporate powers of the company are to be exercised; the manner of electing trustees or directors and officers, * * * and the time of such election; the manner of filling vacancies; the amount of capital to be employed; and such other particulars as may be necessary to explain and make manifest the objects and purposes of the company, and the manner in which it is to be conducted" (section 3); that "the corporators, or the trustees or directors, as the case may be, * * * shall have power * * * to make such by-laws, not inconsistent with this act or the Constitution and laws of this state, as may be deemed necessary for the management of its affairs; * * *" (section 10, p. 890); that "all companies formed under this act shall be deemed and taken to be bodies corporate and politic, * * * and shall be

subject to all the provisions of the Revised Statutes in relation to corporations, so far as the same are applicable, except in regard to annual statements and other matters herein otherwise specially provided for" (section 11) ; that, upon any such company relinquishing its business, the comptroller, "on being satisfied by the" proofs and in the manner as therein provided "that all debts and liabilities of every kind are paid and extinguished," shall deliver up to the company the securities so held by him (section 19, p. 895); and that "every charter created by or under the laws of this state for the purposes" in said act set forth "shall continue until repealed" (section 20, p. 896).

The Revised Statutes then provided that "the term 'monied corporations,' as used in this title, shall be construed to mean every corporation * * * authorized by law to make insurance" (1 Rev. St. p. 598, § 51); that "at every election of directors" of a moneyed corporation "no person shall be admitted to vote directly, or by proxy, except those in whose name the shares of stock * * * shall stand * * * and shall have * * * stood, for at least thirty days previous to the election," on the books of the corporation (Id. p. 596, § 36); that the "charter of every corporation, that shall hereafter be granted by the Legislature, shall be subject to alteration, suspension and repeal, in the discretion of the Legislature" (Id. p. 600, § 8); and that "upon dissolution of any corporation * * * unless other persons shall be appointed by the Legislature, or by some court of competent authority, the directors * * * shall be the trustees of the creditors and stockholders of the corporation dissolved, and shall have full power to settle the affairs of the corporation, collect and pay the outstanding debts, and divide among the stockholders the money and other property that shall remain after the payment of debts and necessary expenses" (Id. § 9).

The defendant society was incorporated with a capital of $100,-000, divided into 1,000 shares, each of the par value of $100; and by its charter it was provided, among other things, unnecessary to refer to here, as follows: That the shares of capital stock "shall be personal property, transferable only on the books of the company, in conformity with its by-laws"; that the holders thereof "may receive a semiannual dividend * * * not to exceed three and one-half per cent.," payable at the times and in the manner designated by the directors, and that the earnings and receipts of the company, over and above the dividends, losses, and expenses, shall be accumulated (article 3) ; that the corporate powers of the company shall be vested in a board of 52 directors, and shall be exercised by them and such officers and agents as they may appoint and empower; that a majority of the board shall be citizens of this state, and each "shall be a proprietor of at least five shares of said capital stock"; that the number of the board may be diminished, by its action, to not less than twenty-four; that the directors shall be elected by ballot, a plurality of votes electing, and that "in the election of directors, every stockholder in the company shall be entitled to one vote for every share of stock held by him, and such vote may

be given in person, or by proxy.  At any time  *  *  *  the board of directors, after giving notice at the two previous meetings, may, by a vote of three-fourths of all the directors, provide that each life policy holder, who shall be insured in not less than five thousand dollars, shall be entitled to one vote at the annual election of directors, but such vote shall be given personally, and not by proxy" (article 4); that the insurance business of the company "shall be conducted on the mutual plan"; and that each policy holder shall be credited with an equitable share of the net surplus after its ascertainment by the officers of the company, which said equitable share shall be applied to the purchase of an additional amount of insurance or of an annuity, in manner and at such interest as the directors shall designate, or be applied in reduction of future premiums, or paid to the persons entitled to receive the same (article 6).

In so far as is material on this motion, it will be seen that the proposed amended charter provides:  That the capital stock shall continue to be $100,000, consisting of 1,000 shares, which shall be personal property, transferable only on the books of the company in conformity with its by-laws.  That the stockholders may receive a semiannual dividend, not to exceed $3\frac{1}{2}$ per centum, payable at the time and in the manner designated by the directors, and that the earnings and receipts, over and above the dividends, losses, and expenses, shall be accumulated.  Article 3.  That the corporate powers of the company shall be vested in a board of directors, to be exercised by such board and such officers and agents as they may from time to time appoint and empower; the board to consist of 52 persons, which number may, by action of the board, be diminished to not less than 28.  That the directors, each of whom shall be a policy holder, or a proprietor of at least five shares of said capital stock, and a majority of whom shall be citizens of this state, shall be chosen by ballot by the stockholders and the policy holders of the company in the following manner:  Six of the vacancies occurring annually to be filled by a plurality vote of the stockholders, each stockholder being entitled to one vote for every share of stock held by him, and the other seven vacancies—the board being divided into four classes, of 13 each, and the term of one class expiring each year—to be filled by a plurality vote of the policy holders of the company; each policy holder, having been such for at least 12 months prior to the time of the election, being entitled to one vote, which may be given in person or by proxy.  That, in event of the number of directors being reduced, the directors to be elected by the stockholders and policy holders, respectively, shall be in proportion as is six to seven; these proportions not to be changed without the consent of three-fifths of the stockholders. Article 4.

Plaintiff claims that there is no authority or power in the defendant corporation to amend its charter in the form as is contemplated by the proposed plan of mutualization, so called, but that its "charter shall continue until repealed," as provided by section 20 of the act under which it was incorporated, or until the company shall, by the

action of its stockholders, determine to relinquish its business (section 19); that any statutory or constitutional reservation of power, if there be any applicable to the defendant company, to so amend the charter of a stock company, would be subversive and in derogation of the vested property rights of the stockholders, and hence in conflict with the provisions of the federal and state Constitutions. In this contention all of the defendants who have intervened, excepting McIntyre and Hyde, have joined, while, on the other hand, counsel for the defendant company urge that the statutory (1 Rev. St. p. 600, § 8) and the constitutional (article 8, § 1, Const. 1846) reservations of power to alter, suspend, and repeal corporate charters, and general laws and special acts for the formation and creation of corporations, together with the provisions of section 52 of the insurance law (chapter 690, p. 1955, Laws 1892, as amended), are applicable to the Equitable Society and to its charter, and are ample authority for the adoption, execution, and filing, after approval by the proper state officers, of the proposed amended charter. Counsel for the interveners McIntyre and Hyde argued that the power of amendment is dependent upon the consent of a majority of the stock, and that, such majority having so assented, though no corporate meeting of the stockholders has at any time been called or held for action on such proposed change, it is sufficient to give effect to the proposed amended charter; the requirements of section 52 of the insurance law being complied with.

Corporations can be created only by some sovereign authority. This may be by a special act, or they may be formed under and pursuant to general laws, when authority to so enact shall have been given to the Legislature by appropriate constitutional provision. When created by special act, that act of incorporation is the charter of the corporation so created, while, when formed pursuant to the provisions of a general law, its charter is the declaration, the certificate, or the articles of incorporation, as the case may be, duly executed and filed, after compliance with all the requirements of the statutes in such cases provided.

The charter of a stock corporation is, as between the corporation and its stockholders, and as to the stockholders inter sese, an executed contract. It is a continuing grant of corporate power. Long Island W. S. Co. v. Brooklyn, 166 U. S. 685, 694, 17 Sup. Ct. 718, 41 L. Ed. 1165. And all applicable provisions of a general law under which a corporation has been formed, not expressly set forth in its certificate or articles of incorporation, are to be read into, and taken to be a part of, its charter, as, for example here, the limitation upon the defendant company acquiring real estate except for the purposes and in the manner as provided by section 9, c. 463, p. 890, of the act of 1853, and also as to the character of the securities in which its capital was to be invested (section 6, amended by ch. 551, p. 1029, Laws 1853).

There is in the act of 1853 no express reservation of power to alter or amend the charter of any company "formed" thereunder, and there is no provision in the charter of the defendant company for an alteration or amendment thereof, save that, by appropriate

action of the board of directors, the number of the directors may be diminished, and certain. life policy holders may be accorded the right to vote in person for directors. Article 4. But the by-laws, rules, and regulations of the company may be amended or repealed by the board of directors. Article 5.

In the absence of language reserving the power to amend and repeal, or of language clearly inconsistent and in conflict with such reservation of power, the general provisions of the Revised Stat-utes must be deemed a part of every statute creating a corporation, or under which a corporation may be formed. They qualify the general act, and enter into and form part of every grant thereunder, and such statutory provision of reservation of power continued to be the law from 1828 until repealed in 1890 (chapters 563, 564, pp. 1060, 1066); but the same provision was re-enacted in 1895 (see chapter 672, p. 452) as section 40 of the general corporation law, and is still continued in force. It is the law to-day. The reasons for the reservation of power to alter and amend are too well known and appreciated to call for discussion here. They have been the subject of much debate ever since the celebrated Dartmouth College Case, and this court can add nothing thereto.

By the express language of the statute of 1853 (chapter 463, p. 887), the defendant company, having been "formed" thereunder, was made "subject, * * * except in regard to annual state-ments and other matters" therein "otherwise specially provided for" (section 11, p. 890), to all the "provisions of the Revised Stat-utes in relation to corporations, so far as the same are applicable," and these provisions included the reserved power of "alteration, suspension and repeal, in the discretion of the Legislature." But it is contended by plaintiff that the act of 1853 has, as to the power of alteration, otherwise specially provided, in that, the company having been "created * * * for the purposes" therein set forth, its "charter * * * shall continue until repealed" (section 20), and that this last provision is so inconsistent with and repugnant to any reserved power of alteration that the two cannot be recon-ciled, for, if the charter is to continue until repealed, then that there can meantime be no alteration or amendment, no suspension thereof. The power to repeal is certainly contemplated, since the charter is to continue until repealed, and a suspension is likewise provided for, since, "upon * * * relinquishing its business," and after "all debts and liabilities of every kind are paid and extinguished," the Comptroller shall deliver up to the company the securities held by him (section 19).

Now, can it be said that by an amendment thereto the charter is not continued? If not, then what becomes of the charter? Does a suspension follow an alteration or amendment? Has it then ceased to exist, though not repealed? True, it may not be in its original language, and may be different in form, but it is still the charter of the company. To amend is to change or modify for the better, and an amendment is an alteration or change for the better, while an alteration involves a change or modification in some respect. Webster's Dict. An amendment is of necessity an alteration,

though an alteration may not be an amendment, since an alteration may be a complete change, and not a change for the better. In so far as relates to the question here under consideration, the words "altered" and "alteration," as used in the Revised Statutes and the Constitution, refer to and mean a change by way of legislative amendment. For illustration, take the act of 1853 under which the Equitable Society was formed; that act has frequently been amended—been altered in some of its parts—but it still continued to be the act of 1853 until its repeal by chapter 690, p. 1955, of the Laws of 1892, though as amended. And so upon the argument of this motion that statute was continually referred to by counsel as the act of 1853. Since there is nothing inconsistent therewith, and as the act of 1853 did not otherwise provide, it follows that the "charter shall continue until repealed," subject meantime, however, to the statutory reserved power, within constitutional limitations, to alter the charter of any corporation formed under and pursuant to the provisions of that act.

At the time of the enactment of the statute of 1853 the Constitution, adopted in 1846, provided that "corporations may be formed under general laws; but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the Legislature, the objects of the corporation cannot be attained under general laws. All general laws and special acts passed pursuant to this section may be altered from time to time or repealed" (article 8, § 1); and that provision has since continued, and is now to be found, in the same language, in section 1, art. 8, of the Constitution of 1894. The power is to alter or repeal "general laws" under and pursuant to which corporations may be formed, "and special acts" creating corporations, and hence has reference to the creating power—the enabling and creating acts.

Referring to the proceedings and debates of the constitutional convention of 1846, it will be seen that two propositions having for their purpose the express reservation of power to amend charters of corporations failed of adoption. One was that "all corporations shall be subject to all such general laws as the Legislature may from time to time enact * * *" (Croswell & Sutton, 172), and the other that "all powers acquired under general laws shall be liable to alteration and extinguishment by law" (Id. 744).

The intention of the framers of the Constitution is to be first sought from the words made use of, and, if there be no ambiguity of expression—if the language used be plain and clear—then the usual and ordinary meaning and significance shall be given thereto. "Effect must be given to the intent as indicated by the language employed." Settle v. Van Evrea, 49 N. Y. 280, 281. It is unnecessary to argue that a corporate charter is not a general law, or that a general law for the formation of corporations is not a corporate charter, though the general law provides and indicates the essentials of the charter of a corporation to be created thereunder. Hence the language of the section under consideration must be given its literal meaning, and the constitutional reservation relates to laws, to statutes, and not to the creatures of the statutes. The power reserved

is to alter or repeal not the charters of corporations created thereby or formed thereunder, but the general laws under which corporations may be formed and special acts creating corporations.

In People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684, speaking of this section, Chief Judge Ruger said (page 45, 111 N. Y., page 700, 18 N. E., 2 L. R. A. 255, 7 Am. St. Rep. 684):

"The obvious intent of the constitutional reservation was to remove any doubt as to the power of the Legislature to amend or repeal laws, whether general or special, authorized by that instrument for the formation of corporations, and seemed to leave the provisions of the Revised Statutes in relation to reserved power over charters in full force and effect. It will be observed that the Constitution * * *" provides "specially for the amendment and repeal of statutes alone, but the Revised Statutes * * * are addressed specially to the subject of the annulment and repeal of charters created under such statutes. It seems to us that these provisions relate to different subjects, viz., the repeal of laws, and the annulment of charters formed under such laws, and that the power to do one does not naturally or properly include the power to do the other. Albany Northern R. Co. v. Brownell, 24 N. Y. 345. Certainly the repeal of a law authorizing corporations would not destroy organizations formed under it, nor would the annulment of a charter affect the law under which it was created. * * * It must be assumed that the framers of the Constitution, as well as the Legislature, used the language employed by them intelligently and according to its common and customary signification, and, when they spoke of the annulment and repeal of acts and laws alone, did not intend to embrace charters as well. These two subjects have frequently been the occasion of legislative action, and, since the restrictions upon the power of the Legislature to grant special charters, there is no reason to suppose that they did not use the language employed in its literal sense, and especially so when both subjects were immediately within the contemplation of the lawmakers."

It is to be noticed, and it may well be remarked, that the learned chief judge, in so much of his opinion as is quoted, speaks of "the repeal of laws, and the annulment of charters" formed under such laws, not of the alteration or amendment of charters, and a reason for this can readily be found, for the question of primal importance in that case was whether chapters 271, 310, pp. 445, 492, of the Laws of 1886, growing out of the statutory annulment and repeal of the charter of the Broadway Surface Railroad Company, and assuming to deal with corporate franchises and property, were constitutional and within any statutory or constitutional reserved power; and it will be seen that the constitutional provision there quoted, considered, and passed upon is the one under consideration here (section 1, art. 8).

In the same case, at General Term (45 Hun, 519), Judge Landon wrote that:

"As an academic question, we might concede that the legislative power to repeal has reference to laws, and not to the creatures organized or formed under the laws. * * *" Page 525.

And Judge Learned, that:

"It is in accordance with these views that the Constitution, in that same section, provided that all general laws and special acts passed pursuant thereto might be altered from time to time or repealed. It made no provision for the alteration or repeal of a corporation formed under a general law. The alteration or repeal contemplated was of a law, not of a private contract

made under a law, and the alteration or repeal of a general law is not the same as the alteration or repeal of a contract made under such a law. * * * As the Constitution, therefore, does not authorize the annulling of a contract of incorporation made under the general law, we may take its language as by implication denying such power. * * *" Page 545.

This court has been referred to no authority holding otherwise as to the effect to be given to the section of the Constitution in question, and the conclusion of the Court of Appeals in the O'Brien Case must obtain on this motion.

A consideration of the cases cited on this branch of the motion by counsel for the defendant company shows that in every instance, excepting Looker v. Maynard, 179 U. S. 46, 21 Sup. Ct. 21, 45 L. Ed. 79, there was a reservation of power, either constitutional or stat-utory, to alter and amend corporate charters; and the Looker Case cannot be considered as a controlling authority upon the constitutional question here under discussion, for that case involved a review of Attorney General v. Looker, 111 Mich. 498, 69 N. W. 929, in which the Supreme Court of Michigan (the highest court in that state) ruled that the Constitution of Michigan reserved the right to amend, alter, or repeal the law under which the Michigan Mutual Life Insurance Company was formed, and that such reserved power applied to and affected its charter. The decision of the state court can have no extraterritorial force, and the United States Supreme Court, in sustaining the ruling there, simply followed its principle of giving the same construction to the statutes of a state as is given by the highest court of that state, unless such construction "conflict with or impair the efficacy of some provision of the federal Constitution or of a federal statute, or a rule of general commercial law." Stutsman County v. Wallace, 142 U. S. 293, 306, 12 Sup. Ct. 227, 35 L. Ed. 1018. In Schurz v. Cook, 148 U. S. 397, 441, 13 Sup. Ct. 645, 37 L. Ed. 498 (Mr. Justice Jackson delivering the opinion), that court, in speaking of the construction by our Court of Appeals of a statute of this state, held that "this construction of the statutes of the state by its highest court is of controlling authority." And to the same tenor and effect are Shelby v. Guy, 11 Wheat. 361, 365, 6 L. Ed. 495; Green v. Neal, 6 Pet. 291, 297, 8 L. Ed. 402; Louisiana v. Pillsbury, 105 U. S. 278, 294, 26 L. Ed. 1090; Bucher v. Cheshire, 125 U. S. 555, 579, 8 Sup. Ct. 974, 31 L. Ed. 795; Gormley v. Clark, 134 U. S. 338, 348, 10 Sup. Ct. 554, 33 L. Ed. 909; Douglass v. Kentucky, 168 U. S. 488, 501, 18 Sup. Ct. 199, 42 L. Ed. 553; Stearns v. Minnesota, 179 U. S. 223, 232, 21 Sup. Ct. 73, 45 L. Ed. 162.

Thus the constitutional reservation applies to "general laws and special acts" only—to statutes as enacted by the Legislature for the purposes indicated in section 1 of article 8—while the statutory reservation has application to the charters of all corporations granted by the Legislature, unless the statute creating a corporation, or under which a corporation is formed, expressly or by language inconsistent therewith provides otherwise.

The provisions of chapter 463, p. 887, of the Laws of 1853, so far as not repealed, have been incorporated in the insurance law (chap-

ter 690, p. 1955, Laws 1892) ; and it is claimed that section 52 of that law, as amended, authorizes the contemplated charter amendment. Until the amendment of that section by the act of 1893 (chapter 725, p. 1797), the defendant company could not have availed itself of its provisions. The company had been formed under and pursuant to a general law repealed by that act (chapter 690, p. 1, Laws 1892) ; the language of section·52 being that "any domestic insurance corporation existing or doing business at the time this chapter takes effect, and not incorporated under any law repealed by this chapter, may, by a vote of a majority of its directors, accept the provisions of this chapter and amend its charter to conform with the same. * * *" As amended in 1893, however, that section applied to the defendant company, since the expression "and not incorporated under any law repealed by this chapter" was eliminated; and it could then have accepted the provisions of chapter 690, and have amended its charter to conform with· the same, or it might have amended its charter "by inserting therein any statement of matter which might have been originally inserted," provided, of course, that such amendment was within constitutional limitations, and not inconsistent with any applicable statutory provision. That section is to be read in connection with section 1 of the insurance law, which reads that "this chapter * * * shall be applicable to all corporations authorized by law to make insurance"; and hence the first paragraph of section 52 must be read, that "any domestic corporation" to which the provisions of that act are applicable may so accept of its provisions and so amend its charter. The amendment of 1901 (chapter 722, p. 1779) has not changed the effect of section 52, as it had existed from 1893, and has not lessened or affected in any wise its application to any domestic insurance company existing and doing business at. the time the insurance law took effect. The amendment of 1901 simply made the provisions of that section applicable to corporations organized under special charters, or under articles 2, 6, and 10 of the insurance law.

That the Equitable Society is a stock, not a membership, corporation, is not open to discussion, and holders of its life insurance policies are not members of the company. There is a contractual relation, the policy holder being a creditor, and his rights are to be "measured by the terms of his policy." Uhlman v. N. Y. Life Ins. Co., 109 N. Y. 421, 429, 17 N. E. 363, 4 Am. St. Rep. 482; Greeff v. Equitable L. A. Co., 160 N. Y. 19, 29, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659.

By the defendant company's charter, in the election of directors each stockholder is "entitled to one vote for each share of stock held by him," in person or by proxy, and each life policy holder, insured in not less than $5,000, may, by action of the board of directors, be accorded one vote, to be given in person, but not by proxy. At its incorporation the law expressly provided that at "every election of directors * * * no persons shall be admitted to vote, except those in whose names the shares of stock * * * shall stand" on the corporation's books (1 Rev. St. p. 596, § 36),

which books—stock and transfer—were provided for and required by section 45 (Id. 597). Now, is not a grant of the right to vote at an election of directors to a person who is not a stockholder (not a member of a stock corporation), but is a life policy holder thereof (a creditor), inconsistent with the plain language of the provision that "no persons" except stockholders "shall be admitted to vote" thereat? If so, then we must consider the charter with that provision eliminated, since any provision therein contained inconsistent, at the time of its incorporation, with any applicable constitutional or statutory provision, was invalid, and this company was made subject to the provisions of section 36, as before quoted. Chapter 463, p. 890, Laws 1853, § 11.

The provisions of section 36, as said before, were continued until repealed by chapters 563, 564, pp. 1060, 1066, of the Laws of 1890 (the stock corporation and the general corporation laws). Section 20 of the stock corporation law (chapter 564, p. 1069, Laws 1890), until 1901, provided that directors should be chosen from the stockholders, and that, upon a director ceasing to be a stockholder, his office became vacant, but in 1901 that section was amended (chapter 354, p. 961) by providing that "each director shall be a stockholder unless otherwise provided in the certificate, or in a by-law adopted by a stockholders' meeting." That section has, however, since 1892 (chapter 688, p. 1824), provided that policy holders of an insurance company shall be eligible to election as directors; and, if this was theretofore permissible, why this statutory provision? From its amendment, in 1892 (chapter 687, p. 1800), until 1901, section 20 of the general corporation law provided that, in an election of directors of a stock corporation, each stockholder shall be entitled to one vote for every share of stock held by him, when, by chapter 355, p. 355, of the Laws of 1901, that section was amended so as to read that, "unless otherwise provided in the certificate of incorporation, every shareholder of record of a stock company shall be entitled * * * to one vote for every share of stock standing in his name * * *"; but since 1892 that section has provided that the charter of a stock corporation may provide for cumulative voting by stockholders. Section 52 of the insurance law contemplates corporate action by the board of directors only—"a vote of a majority" thereof—and not the corporate action of the stockholders. Here there has been no opportunity afforded the stockholders to act as such upon the proposed change, no stockholders' meeting has been called or held for that purpose, and the subject was not presented for consideration at the annual meeting for the election of directors held in December, 1904. The suggestion of counsel for McIntyre and Hyde that the assent of the majority of the shares of stock (no corporate meeting having been held) is sufficient to bind the minority stockholders is without merit, and calls for no consideration here. The action of stockholders, where necessary, must be had at a stockholders' meeting, otherwise it is the act and expression of the individuals only; but it is undoubtedly true that, where a stockholder or a member of a corporation expressly consents to or tacitly acquiesces in any corporate

act, he will afterwards be estopped from impeaching such act. Unless it be held that it is so provided in its charter, no authority for the election of policy holders as directors of the Equitable Society can be found in section 20 of the stock corporation law, for there is no evidence that a "by-law" so providing "has been adopted by a stockholders' meeting."

The question now to be considered is whether the proposed amended charter is violative of the protection given by the federal and state Constitutions, it being claimed by the stockholders now before the court that the contemplated change will deprive them of property and of property rights.

The stockholders of the defendant company are members of the corporation (People v. N. Y. Security Life Ins. Co., 78 N. Y. 111, 123, 34 Am. Rep. 522); are the equitable owners of the corporate property (Matter, etc., of Argus Co., 138 N. Y. 557, 569, 34 N. E. 388; Martin v. Niagara Co., 122 N. Y. 165, 172, 25 N. E. 303); and the right of a stockholder to vote upon his holdings of stock is a property right—"one of the essential rights of ownership" (Sullivan v. Parkes, 69 App. Div. 221, 229, 74 N. Y. Supp. 787). Hence the right of a stockholder to participate in the selection of those who are to be vested with the exercise of the corporate powers (the board of directors) is an attribute to his shares of stock, which has been "defined as a right which its owner has in the management, profits, and ultimate assets of the corporation." Lamkin v. Palmer, 24 App. Div. 255, 260, 48 N. Y. Supp. 427, affirmed 164 N. Y. 201, 58 N. E. 123. In an election for directors of a stock corporation, unless the charter otherwise provides, the share of stock is the voting unit, and, in the absence of some controlling statutory charter, or by-law restriction, the right of the stockholder "to vote his shares at corporate elections is an incident of the ownership of the shares. It inheres in the legal holder of them, under the principles of the common law, and is in the nature of property." 10 Cyc. 352, citing Com. v. Dalzell, 152 Pa. 217, 25 Atl. 535, 34 Am. St. Rep. 640.

It was held in Kinnan v. Sullivan County Club, 26 App. Div. 213, 216, 50 N. Y. Supp. 95, 97, that:

"The right to vote upon stock of a corporation is essential to the protection of its owner. It is one of those inherent rights which go with the purchase of the stock. * * * The power to take away the franchise of a stockholder stands upon the same footing precisely as the power to prevent the transfer of stock."

The persons who originally subscribed and paid for shares of the defendant company's capital stock did so, it is to be presumed, upon the faith of the declaration of incorporation, the provisions of the law under which the company was formed, and also the provisions of the Revised Statutes applicable thereto, which assured to the stockholder, by reason of his right to vote for all the directors, that measure of participation in the control and management of the corporation, its property and affairs. Those to-day holding such shares of stock have the same right to rely upon such provisions of law and of the charter, save as they have been within constitutional limitations amended or repealed. By such declaration of incorporation and such provisions of law, each stockholder has

the right to vote for all the directors, each of whom shall be the owner of at least five shares of such capital stock. The board of directors is to elect annually, "from among their number, a president," and this insures the selection of a stockholder as president. It is now proposed that the stockholders shall have the right to vote for and to elect but six-thirteenths in number of the directors hereafter to be elected, and, if the board shall consist of 52 persons, then the stockholders may, by a plurality of their votes, in person or by proxy, elect 24 only, and in that ratio, if the number be diminished, but such "proportions shall not be changed without the consent of three-fifths of the stock of the company." Thus the stockholder has lost the right to vote for all, and as well a majority, of the directors, and that would prevent him, as said in Sullivan v. Parkes, 69 App. Div. 229, 74 N. Y. Supp. 793, "from exercising one of the essential rights of ownership, viz., that of voting on his stock" for all directors to be elected. By the present charter a life policy holder insured in not less than $5,000 may be accorded, in an election for directors, who shall be stockholders, however, one vote, "to be given personally, and not by proxy"; but by the proposed amended charter each director shall be a policy holder or a proprietor of at least five shares of the capital stock, and all life policy holders shall be entitled, in any such election for directors, each to one vote, in person or by proxy, and shall have the right to vote for and to elect seven-thirteenths of the number of directors to be elected each year. The board of directors shall likewise annually elect from among their number a president, who may be either a policy holder or a stockholder having at least five shares, for such are the requirements for directorship, aside from that the majority shall be residents of this state. "Directors of a corporation are not vested with the title to the property of the corporation. * * * They are agents of the corporation, upon whom the duties devolve of management and care" (Dykman v. Kenney, 154 N. Y. 483, 491, 48 N. E. 894)—the exercise of corporate powers for the benefit of the equitable owners of the corporate property, the stockholders. The directors are the trustees, and the stockholders are the cestuis que trust.

On the argument it was asserted by both sides that there were upwards of 600,000 policy holders, scattered all over the world. That being so, the right to vote by proxy relieves those not living conveniently near to the place of annual meetings from the necessity of travel. But assume, for the sake of the argument, that a majority of the policy holders availing themselves of the voting privilege (waiving for the time the question of legality) vote by proxy, and such proxies are controlled by persons whose interests and desires may be inimical to the rights and interests of the stockholders, and the opportunity for the absolute loss of control by the stockholders is presented. Consider the possibility. There would be the policy holders' majority—28 to 24, as the board is proposed to be constituted—with the selection by that majority of a policy holder for president, and the filling of the offices of the company with policy holders or persons not stockholders; and then calmly

answer the question, have the property rights of the stockholders been invaded or destroyed? It is not to be argued that such a situation is probable, but it is possible; and then the right of dominion over the management, profits, and ultimate assets of the company would be lost to those who can only look for that which their shares of stock represent—at least the par value—after every debt and liability of every nature, contingent included, have been fully paid and discharged. As provided by the Laws of 1853 (page 895, c. 463, § 19), and the Revised Statutes (volume 1, p. 600, § 9), upon any insurance company relinquishing its business, and after payment of all debts, liabilities, and expenses, its "monies and other property that shall remain" shall be divided among the stockholders. The provisions last above referred to are now to be found in section 72 of the insurance law and in section 30 of the general corporation law; the only change being that the moneys and other property remaining shall be "divided among the persons entitled thereto." The directors of the corporation, unless other persons are appointed by the Legislature or by some court of competent authority, "shall be trustees" for the creditors and stockholders. General Corporation Law, § 30 (1 Rev. St. p. 600, § 9); People ex rel. Haberman v. James, 5 App. Div. 412, 417, 39 N. Y. Supp. 313; People v. O'Brien, 111 N. Y. 63, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684.

While it is undoubtedly true that, unless so provided and required by statute or by charter, a director of a corporation need not be a stockholder therein, yet here the requirement of the charter is that the directors shall each be the proprietor of five shares, at least; and the reason therefor is well stated in C. N. Bank v. Colwell, 132 N. Y. 250, 256, 30 N. E. 644, 645, that:

"The requirement that a director should have, at his election, and throughout his term of office, at least five shares, manifests that it was the policy of the Legislature [here of the corporators] that the management of the affairs of such corporation should be committed to those having a personal, pecuniary interest in its success or failure—in the conduct of business for which it was created; otherwise the provision is without reason for its support."

To deprive an owner of property of any one of "its essential attributes is depriving him of his property." People ex rel. Manhattan Institution v. Otis, 90 N. Y. 48. And the contemplated change of charter would deprive the stockholder of his property.

It is unnecessary on this motion to express any opinion as to the rights of either the policy holders or stockholders to the surplus or any part thereof. Indeed, the policy holders are not before the court, none having intervened; and this question should await the trial of the action, when, if found necessary, the court may direct that they be brought in. Suffice here to say the plaintiff and the intervening defendant stockholders claim to be entitled to some part and share in the surplus. Whatever right, if any, the stockholder may have to the surplus, grows out of his being the owner of shares of the capital stock of the company, and must await final distribution, while here the policy holder's right is dependent upon his

policy and its continuance, and "must be determined by the terms of that instrument." Greeff Case, 160 N. Y. 29, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659.

The internal differences between some of the gentlemen most prominently concerned with the management of the company have had no weight with the court on this motion, and comment upon the allegations touching upon disagreements is unnecessary. The court has nothing to do with the reasons or purposes actuating either those who have sought to bring about the contemplated change of charter, or of those who now seek to restrain its effectuation. The intentions of all are presumed to be for the good of those interested, and it is for this court only to consider and fearlessly to determine the questions presented.

The motion to strike out certain statements contained in plaintiff's moving papers and in McIntyre and Hyde's intervening petition are denied.

The recent denial by Mr. Justice McLean, of the First Department, in Tull v. Equitable Life Assurance Society, of a motion to enjoin the defendant and the Superintendent of Insurance "from all further proceedings in respect to the approval of the proposed amendment of" the defendant's charter, has no bearing upon the question here. In so far as that motion related to the Superintendent of Insurance, the provisions of section 605 of the Code of Civil Procedure applied, and such Code provision called for the disposition made of the motion.

The motion is therefore granted, but limited to the filing and effectuation of such proposed amended charter, for it appears that such contemplated amendment has been adopted and executed by the board of directors.